# EXHIBIT 1



November 14, 2018

**VIA ONLINE PORTAL**

Michael Toland, Ph.D.
Departmental FOIA Officer
Office of Privacy and Open Government
U.S. Department of Commerce
14th and Constitution Avenue NW
Mail Stop 52010FB
Washington, D.C. 20230
Via FOIAOnline

Re: Freedom of Information Act Request

Dear Dr. Toland:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Department of Commerce's (Commerce) implementing regulations, American Oversight makes the following request for records.

Secretary Ross reportedly maintained ownership of numerous businesses while in office that may have given rise to conflicts of interest.[1] Although Secretary Ross has now reportedly formally divested from many of these business interests, reports indicate that those ownership interests have merely been passed to a family trust.[2] And records released to American Oversight suggest that Secretary Ross discussed business matters with Chevron executives while his wife owned a stake of more than $250,000 in that corporation.[3]

American Oversight seeks records with the potential to shed light on whether Secretary Ross has complied with his ethical obligations, and whether and to what extent Secretary Ross may have communicated with entities that affect his personal financial interests.

---

[1] Matthew Yglesias, *Commerce Secretary Wilbur Ross Is Tied Up in Major Financial Conflicts of Interest*, VOX (June 20, 2018, 8:00 AM), https://www.vox.com/2018/6/20/17479170/wilbur-ross-corruption.

[2] *Id.*

[3] Dan Alexander, *Wilbur Ross Scheduled Meetings With Chevron, Boeing Despite Conflicts of Interest*, FORBES, Oct. 25, 2018, https://www.forbes.com/sites/danalexander/2018/10/25/wilbur-ross-scheduled-meetings-with-chevron-boeing-despite-conflicts-of-interest/#1c822baf4d0e.

 1030 15th Street NW, Suite B255, Washington, DC 20005   |   AmericanOversight.org

<u>Requested Records</u>

American Oversight requests that Commerce produce the following within twenty business days:

> All records reflecting communications (including emails, email attachments, voicemail transcripts, text messages, messages on messaging platforms (such as Slack, GChat or Google Hangouts, Lync, Skype, WhatsApp, Signal, Facebook or Twitter Direct Messages), telephone call logs, calendar invitations/entries, meeting notices, meeting agendas, informational material, talking points, any handwritten or electronic notes taken during any oral communications, summaries of any oral communications, or other materials) between (1) Secretary Wilbur Ross, former Chief of Staff Wendy Teramoto, Acting Deputy Secretary Karen Dunn Kelley, or any assistants or schedulers acting on their behalves and (2) any of the individuals or entities named in Sections 2, 3, 4, 7, 8, 10, and Attachment A of Mr. Ross' ethics agreement submitted on January 15, 2017. We have attached a copy of the ethics agreement Exhibit A for your reference.

In addition to the records requested above, American Oversight also requests records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched and any tracking sheets used to track the processing of this request. If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

American Oversight seeks all responsive records regardless of format, medium, or physical characteristics. In conducting your search, please understand the terms "record," "document," and "information" in their broadest sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs, as well as letters, emails, facsimiles, telephone messages, voice mail messages and transcripts, notes, or minutes of any meetings, telephone conversations or discussions. Our request includes any attachments to these records. **No category of material should be omitted from search, collection, and production.**

Please search all records regarding agency business. **You may not exclude searches of files or emails in the personal custody of your officials, such as personal email accounts.** Records of official business conducted using unofficial systems or stored outside of official files is subject to the Federal Records Act and FOIA.[4] **It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; American Oversight has a right to records contained in those files even if material has not yet been**

---

[4] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149–50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955–56 (D.C. Cir. 2016).

COMM-18-0818

moved to official systems or if officials have, through negligence or willfulness, failed to meet their obligations.[5]

In addition, please note that in conducting a "reasonable search" as required by law, you must employ the most up-to-date technologies and tools available, in addition to searches by individual custodians likely to have responsive information. Recent technology may have rendered your agency's prior FOIA practices unreasonable. **In light of the government-wide requirements to manage information electronically by the end of 2016, it is no longer reasonable to rely exclusively on custodian-driven searches.**[6] **Furthermore, agencies that have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies, now maintain emails in a form that is reasonably likely to be more complete than individual custodians' files.** For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools would capture that email under Capstone. Accordingly, American Oversight insists that your agency use the most up-to-date technologies to search for responsive information and take steps to ensure that the most complete repositories of information are searched. American Oversight is available to work with you to craft appropriate search terms. **However, custodian searches are still required; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.**

Under the FOIA Improvement Act of 2016, agencies must adopt a presumption of disclosure, withholding information "only if . . . disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law."[7] If it is your position that any portion of the requested records is exempt from disclosure, American Oversight requests that you provide an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). As you are aware, a *Vaughn* index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is

---

[5] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016) ("The Government argues that because the agency had a policy requiring [the official] to forward all of his emails from his [personal] account to his business email, the [personal] account only contains duplicate agency records at best. Therefore, the Government claims that any hypothetical deletion of the [personal account] emails would still leave a copy of those records intact in [the official's] work email. However, policies are rarely followed to perfection by anyone. At this stage of the case, the Court cannot assume that each and every work-related email in the [personal] account was duplicated in [the official's] work email account." (citations omitted)).

[6] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidential-memorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

[7] FOIA Improvement Act of 2016 § 2 (Pub. L. No. 114–185).

COMM-18-0818

actually exempt under FOIA."[8] Moreover, the *Vaughn* index "must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information."[9] Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'"[10]

In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[11] Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a *Vaughn* index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

**You should institute a preservation hold on information responsive to this request.** American Oversight intends to pursue all legal avenues to enforce its right of access under FOIA, including litigation if necessary. Accordingly, you are on notice that litigation is reasonably foreseeable.

To ensure that this request is properly construed, that searches are conducted in an adequate but efficient manner, and that extraneous costs are not incurred, American Oversight welcomes an opportunity to discuss its request with you before you undertake your search or incur search or duplication costs. By working together at the outset, American Oversight hopes to decrease the likelihood of costly and time-consuming litigation in the future.

Where possible, please provide responsive material in electronic format by email or in PDF or TIF format on a USB drive. Please send any responsive material being sent by mail to American Oversight, 1030 15th Street NW, Suite B255, Washington, DC 20005. If it will accelerate release of responsive records to American Oversight, please also provide responsive material on a rolling basis.

<u>Fee Waiver Request</u>

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and your agency's implementing regulations, American Oversight requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures

---

[8] *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

[9] *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223–24 (D.C. Cir. 1987) (emphases in original).

[10] *Id.* at 224 (citing *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

[11] *Mead Data Central*, 566 F.2d at 261.

COMM-18-0818

will likely contribute to public understanding of those operations. Moreover, the request is primarily and fundamentally for non-commercial purposes.

American Oversight requests a waiver of fees because disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of activities of the government. The disclosure of the information sought under this request will document and reveal the operations of the federal government, including how the highest-ranking officials in the Commerce Department comply with their ethical obligations to avoid conflicts of interest. Specifically, the records requested here will shed light on whether and to what extent Secretary Ross, and high-ranking officials in his agency, have communicated with businesses in which Secretary Ross has financial interests.[12] The American public deserves to know whether a cabinet official has financial interests that conflict with the interests of the public. And, as described below, American Oversight has the intention and ability to disseminate the records it received to a broad audience.

This request is primarily and fundamentally not for commercial purposes, but rather the primary interest is in public disclosure of responsive records. As a 501(c)(3) nonprofit, American Oversight does not have a commercial purpose and the release of the information requested is not in American Oversight's financial interest. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. American Oversight uses the information gathered, and its analysis of it, to educate the public through reports, press releases, or other media. American Oversight also makes materials it gathers available on its public website and promotes their availability on social media platforms, such as Facebook and Twitter.[13] American Oversight has demonstrated its commitment to the public disclosure of documents and creation of editorial content. For example, after receiving records regarding an ethics waiver received by a senior DOJ attorney,[14] American Oversight promptly posted the records to its website and published an analysis of what the records reflected about DOJ's process for ethics waivers.[15] As another example, American Oversight has a project called "Audit the Wall," where the organization is gathering and analyzing information and

---

[12] *See* Yglesias, *supra* note 1.

[13] American Oversight currently has approximately 11,900 page likes on Facebook and 45,800 followers on Twitter. American Oversight, FACEBOOK, https://www.facebook.com/weareoversight/ (last visited Nov. 9, 2018); American Oversight (@weareoversight), TWITTER, https://twitter.com/weareoversight (last visited Nov. 9, 2018).

[14] *DOJ Civil Division Response Noel Francisco Compliance,* AMERICAN OVERSIGHT, https://www.americanoversight.org/document/doj-civil-division-response-noel-francisco-compliance.

[15] *Francisco & the Travel Ban: What We Learned from the DOJ Documents,* AMERICAN OVERSIGHT, https://www.americanoversight.org/francisco-the-travel-ban-what-we-learned-from-the-doj-documents.

COMM-18-0818

commenting on public releases of information related to the administration's proposed construction of a barrier along the U.S.-Mexico border.[16]

Accordingly, American Oversight qualifies for a fee waiver.

## Conclusion

We share a common mission to promote transparency in government. American Oversight looks forward to working with your agency on this request. If you do not understand any part of this request, have any questions, or foresee any problems in fully releasing the requested records, please contact Dan McGrath at foia@americanoversight.org or (202) 897-4213. Also, if American Oversight's request for a fee waiver is not granted in full, please contact us immediately upon making such a determination.

Sincerely,

Austin R. Evers
Executive Director
American Oversight

---

[16] *Audit the Wall*, AMERICAN OVERSIGHT, https://www.americanoversight.org/investigation/audit-the-wall.

COMM-18-0818

# Exhibit A

January 15, 2017

Mr. David Maggi
Alternate Designated Agency Ethics Official
U.S. Department of Commerce
1401 Constitution Avenue, N.W.
Washington, D.C.  20230

Dear Mr. Maggi:

The purpose of this letter is to describe the steps that I will take to avoid any actual or apparent conflict of interest in the event that I am confirmed for the position of Secretary of the Department of Commerce.

SECTION 1 – GLOBAL RECUSAL REQUIREMENT

As required by 18 U.S.C. § 208(a), I will not participate personally and substantially in any particular matter in which I know that I have a financial interest directly and predictably affected by the matter, or in which I know that a person whose interests are imputed to me has a financial interest directly and predictably affected by the matter, unless I first obtain a written waiver, pursuant to 18 U.S.C. § 208(b)(1), or qualify for a regulatory exemption, pursuant to 18 U.S.C. § 208(b)(2).  I understand that the interests of the following persons are imputed to me:  any spouse or minor child of mine; any general partner of a partnership in which I am a limited or general partner; any organization in which I serve as officer, director, trustee, general partner or employee; and any person or organization with which I am negotiating or have an arrangement concerning prospective employment.

SECTION 2 – POSITIONS AND ASSETS RELATED TO INVESCO

Upon confirmation, I will resign from my position with Invesco Ltd. and its affiliates, including WL Ross & Co., LLC (collectively, "Invesco").  These resignations include, but are not limited to, resignation from my position with each of the following affiliated Invesco entities:

1. Huaneng Invesco WLR Investment Consulting Company Ltd.
2. Invesco Private Capital Investments, Inc.
3. Invesco Private Capital, Inc.
4. Invesco WLR Limited
5. Invesco WLR Private Equity Investment Management, Ltd.
6. WL Ross & Co LLC
7. WL Ross & Co (India) LLC

Prior to assuming the duties of the position of Secretary, I will receive a bonus payment for calendar year 2016.  I will forfeit this payment if I do not receive it before I assume the duties

Mr. David Maggi
Alternate Designated Agency Ethics Official
Page 2

of the position of Secretary. I hold stock and unvested restricted stock in Invesco, Ltd. I do not hold stock options. I previously held an interest in a money purchase plan through Invesco, Ltd., but the company terminated this plan and fully distributed the balance of my account to me. Before I assume the duties of the position of Secretary, Invesco, Ltd. will vest my unvested restricted stock. I will forfeit any restricted stock that is unvested at the time I assume the duties of the position of Secretary. Invesco will distribute the shares of vested restricted stock (i.e., stock) to me within 180 days of its vesting, and I will divest these shares within 30 days of distribution. I will divest all of my other financial interests in Invesco, except for those interests specifically identified in Section 10 below as being retained. I will complete the divestiture of these other financial interests in Invesco within 90 days of my confirmation, except as specifically provided otherwise in Section 9 (Assets To Be Divested) below and in Attachment A. With respect to each of these Invesco entities, I will not participate personally and substantially in any particular matter that to my knowledge has a direct and predictable effect on the financial interests of the entity or its holdings until I have divested it, unless I first obtain a written waiver, pursuant to 18 U.S.C. § 208(b)(1), or qualify for a regulatory exemption, pursuant to 18 U.S.C. § 208(b)(2). For a period of two years after my appointment to the position of Secretary, I will not participate personally and substantially in any particular matter in which Invesco, Ltd. or any of its affiliated entities is a party or represents a party.[1]

SECTION 3 – POSITION AND ASSETS RELATED TO EXCO RESOURCES

Upon confirmation, I will resign from my position with Exco Resources, Inc. ("Exco"). I hold stock and unvested restricted stock in Exco, but I do not hold stock options. Exco will not accelerate the vesting of my unvested restricted stock. I will forfeit any restricted stock that is unvested at the time I assume the duties of the position of Secretary. Within 90 days of my confirmation, I will divest all of my direct financial interests in Exco, and within 180 days of my confirmation, I will divest all of my indirect financial interests in Exco that I hold through investment entities listed in Attachment A. I will not participate personally and substantially in any particular matter that to my knowledge has a direct and predictable effect on the financial interests of Exco until I have divested it, unless I first obtain a written waiver, pursuant to 18 U.S.C. § 208(b)(1), or qualify for a regulatory exemption, pursuant to 18 U.S.C. § 208(b)(2). For a period of two years after my receipt of this payment, I will not participate personally and substantially in any particular matter in which Exco is a party or represents a party, unless I first receive a written waiver pursuant to 5 C.F.R. § 2635.503(c).

SECTION 4 – INCOME FROM ROTHSCHILD & CO.

I have a contractual right to income from the Rothschild & Co. Profit Sharing Plan. Within 90 days of my confirmation, I will divest my right to this income by irrevocably assigning the right to a charity. I will not participate personally and substantially in any particular matter that to my knowledge has a direct and predictable effect on the financial

---

[1] References in this ethics agreement to the divestiture of a fund, limited partnership, or limited liability company include the divestitures of all assets, holdings, subsidiaries, and subordinate interests of such entities, except as expressly indicated otherwise in this ethics agreement.

Mr.  David Maggi
Alternate Designated Agency Ethics Official
Page 3

interests of Rothschild & Co. until I have divested my right to this income, unless I first obtain a written waiver, pursuant to 18 U.S.C. § 208(b)(1), or qualify for a regulatory exemption, pursuant to 18 U.S.C. § 208(b)(2).

SECTION 5 – RETENTION OF POSITIONS WITH ENTITIES IN WHICH I HAVE A FINANCIAL INTEREST

I will retain my unpaid positions as managing member of 1116 South Main Street, LLC, 781 Fifth Avenue, LLC, and El Vedado LLC. I am the sole member of each of these entities. The sole assets of 1116 South Main Street, LLC, and 781 Fifth Avenue, LLC are personal residences. El Vedado LLC will divest a small interest that it holds in WL Ross Group, LP, and thereafter its sole asset will be a personal residence. These entities will not acquire new assets during my appointment as Secretary, except that, if the residences are sold, the proceeds will be reinvested in cash, cash equivalents, obligations of the United States, or investment funds that qualify for the exemption at 5 C.F.R. § 2640.201(a). I will not participate personally and substantially in any particular matter that to my knowledge has a direct and predictable effect on the financial interests of 1116 South Main Street, LLC, 781 Fifth Avenue, LLC, and El Vedado LLC or their underlying assets for as long as I own them, unless I first obtain a written waiver, pursuant to 18 U.S.C. § 208(b)(1), or qualify for a regulatory exemption, pursuant to 18 U.S.C. § 208(b)(2).

SECTION 6 – RESIGNATIONS FROM POSITIONS WITH ENTITIES IN WHICH I HAVE NO FINANCIAL INTERESTS

Upon confirmation, I will resign from my positions with the following entities:

1. American Friends of the René Magritte Museum
2. Blenheim Foundation USA
3. British American Business
4. Brookings Economic Studies Council
5. Brookings Institution
6. Harvard Business School Club of New York
7. Musée des Arts Decoratifs
8. Palm Beach Civic Association
9. Palm Beach Preservation Foundation
10. Palm Beach Retirement Funds
11. The Japan Society, Inc.
12. The Partnership for New York City

I do not hold any financial interest in any of these entities.  For a period of one year after my resignation from each of these entities, I will not participate personally and substantially in any particular matter involving specific parties in which I know that entity is a party or represents a party, unless I am first authorized to participate, pursuant to 5 C.F.R. § 2635.502(d).

Mr.  David Maggi
Alternate Designated Agency Ethics Official
Page 4

SECTION 7 – RESIGNATIONS FROM POSITIONS WITH ENTITIES IN WHICH I HAVE
FINANCIAL INTERESTS AND AM RETAINING THOSE INTERESTS

Upon confirmation, I will resign from my positions with the following entities:

1. The Briarcliff Condominium Apartment Building
2. DSS Holdings LP (Diamond S Shipping and Diamond S Shipping Group Inc.)
3. Starboard GP Ltd. (Cayman)
4. Starboard WLR Associates L.P.
5. WLR Cardinal Associates Ltd.
6. WLR Recovery Associates IV DSS AIV GP, Ltd. (Cayman)
7. WLR Recovery Associates V DSS AIV GP, Ltd. (Cayman)

I hold a financial interest in each of these entities.  Accordingly, with regard to each of these
entities, I will not participate personally and substantially in any particular matter that to my
knowledge has a direct and predictable effect on the financial interests of the entity or its
underlying assets for as long as I own it, unless I first obtain a written waiver, pursuant to
18 U.S.C. § 208(b)(1), or qualify for a regulatory exemption, pursuant to 18 U.S.C. § 208(b)(2).

SECTION 8 – RESIGNATIONS FROM POSITIONS WITH ENTITIES IN WHICH I HAVE
FINANCIAL INTERESTS AND AM DIVESTING THOSE INTERESTS

Upon confirmation, I will resign from my positions with the following entities:

1. Absolute Recovery Capital Partners, LLC
2. Absolute Recovery Hedge Fund, Ltd.; Absolute Recovery Master Fund Ltd.
3. ArcelorMittal
4. Bank of Cyprus
5. Euro Wagon Ltd. (position with Euro Wagon Ltd., divesting Euro Wagon L.P)
6. Euro Wagon II Ltd. (position with Euro Wagon II Ltd., divesting Euro Wagon II
   L.P)
7. India Asset Recovery Associates LLC
8. India Asset Recovery GP Ltd. (Cayman)
9. India Asset Recovery Fund Limited (Mauritius)
10. Nexeo Solutions, Inc.
11. Ross CG GP LLC
12. Ross Expansion FLP, LP
13. Ross Expansion GP, LLC
14. Sun BanCorp. Inc. (Sun National Bank)
15. WLR China Energy Associates, Ltd.
16. WLR Euro Wagon Management Ltd. (Jersey)
17. WLR IV Loans AIV Feeder (Cayman), Ltd.
18. WLR Master Co-Investment SLP GP, Ltd.
19. WLR Recovery Associates II LLC
20. WL Ross Group (Cayman) Ltd.

Mr.  David Maggi
Alternate Designated Agency Ethics Official
Page 5

     21. WLR-SC Financing Conduit LLC
     22. WLR Select Associates DSS GP, Ltd.

I hold a financial interest in each of these entities.  Following my confirmation, I will divest my financial interest in each of these entities as set forth in Section 9 (Assets To Be Divested) below and in Attachment A.  With regard to each of these entities, I will not participate personally and substantially in any particular matter that to my knowledge has a direct and predictable effect on the financial interests of the entity until I have divested it, unless I first obtain a written waiver, pursuant to 18 U.S.C. § 208(b)(1), or qualify for a regulatory exemption, pursuant to 18 U.S.C. § 208(b)(2).  For a period of one year after my resignation from each of these entities, I also will not participate personally and substantially in any particular matter involving specific parties in which I know that entity is a party or represents a party, unless I am first authorized to participate, pursuant to 5 C.F.R. § 2635.502(d).

SECTION 9 – ADDITIONAL ASSETS TO BE DIVESTED

     I will divest all of my financial interests in the entities identified in Attachment A. With regard to each of the entities identified in Attachment A, I will not participate personally and substantially in any particular matter that to my knowledge has a direct and predictable effect on the financial interests of the entity until I have divested it, unless I first obtain a written waiver, pursuant to 18 U.S.C. § 208(b)(1), or qualify for a regulatory exemption, pursuant to 18 U.S.C. § 208(b)(2).

     Attachment A specifies the timeframes for divesting these assets, specifically providing for the divestiture of some assets to occur within 90 days and for the divestiture of other assets to occur within 180 days. The reason for extending the timeframe to 180 days for certain assets is that these assets are illiquid and it may take longer to divest them. I am, however, committed to divesting all of these assets as promptly as is reasonably practicable, and I may not need the entire 180-day period to complete all divestitures. As to the assets subject to the 180-day deadline, you have advised me that you may be willing to consider a brief extension of up to 60 days for a subset of these assets, provided that I demonstrate that I have made substantial progress toward completing the divestiture of all of these assets by the end of the 180-day time period.

SECTION 10 – ASSETS TO BE RETAINED

     I will retain my financial interests in the following entities:

     1. Starboard GP Ltd.
     2. Starboard WLR Associates, L.P.
     3. WLR IMRF II Associates LLC
     4. WLR/IVZ Mortgage Recovery Associates LLC
     5. WLR Mezzanine Associates LLC
     6. WLR Recovery Associates IV DSS AIV, L.P.
     7. WLR Recovery Associates IV DSS AIV GP, Ltd.

Mr.  David Maggi
Alternate Designated Agency Ethics Official
Page 6

        8.   WLR Recovery Associates V DSS AIV, L.P.
        9.   WLR Recovery Associates V DSS AIV GP, Ltd.

With regard to each of these entities, I will not participate personally and substantially in any particular matter that to my knowledge has a direct and predictable effect on the financial interests of the entity, unless I first obtain a written waiver, pursuant to 18 U.S.C. § 208(b)(1), or qualify for a regulatory exemption, pursuant to 18 U.S.C. § 208(b)(2).

      The holdings of these entities are limited to the following sectors: (1) real estate financing and mortgage lending, and (2) transoceanic shipping. The following entities are no longer acquiring new assets, and they will not acquire any new assets during my appointment to my position as Secretary:  WLR/IVZ Mortgage Recovery Associates LLC; WLR Mezzanine Associates LLC; WLR Recovery Associates IV DSS AIV, L.P.; WLR Recovery Associates IV DSS AIV GP, Ltd.; WLR Recovery Associates V DSS AIV, L.P.; and WLR Recovery Associates V DSS AIV GP, Ltd.  The following entities are not fully invested, but are contractually limited to investing in the same sector in which they already are investing: Starboard GP Ltd.; Starboard WLR Associates, L.P.; and WLR IMRF II Associates LLC. My retained interests in these three entities will be solely as a passive investor, without prior knowledge of or influence over investment decisions made by the funds' managers.

      As the senior ethics official for the Department of Commerce, you have advised me that it is not necessary at this time for me to divest the entities identified in this section, inasmuch as the likelihood that I will need to participate in any particular matter affecting these entities is remote.  However, I will remain vigilant in identifying any particular matters affecting the interests of these entities and their holdings, including both particular matters involving specific parties and particular matters of general applicability.  You have explained that particular matters of general applicability are much broader than particular matters involving specific parties because they include every matter that is focused on the interests of a discrete and identifiable class of persons, such as an industry.

SECTION 11 – ETHICS IN GOVERNMENT ACT RESTRICTION

      Upon confirmation, I will not permit my name to be used by any firm, partnership, association, corporation, or other entity that provides professional services involving a fiduciary relationship, pursuant to 5 U.S.C.  app. § 502(a)(2).  Invesco previously acquired all rights to the name "WL  Ross & Co." I made a good faith request to Invesco that the following entities discontinue using my name if I am confirmed: W.L. Ross & Co., LLC and WL Ross & Co. (India) LLC.  In connection with this request, I specifically advised them that you have indicated the use of initials would be acceptable in place of "Ross."

Mr. David Maggi
Alternate Designated Agency Ethics Official
Page 7

## SECTION 12 – ADDITIONAL ACTIONS, ETHICS BRIEFING

Following confirmation and before I assume the duties of the position of Secretary, I will provide you with a list of every asset that I acquired subsequent to filing my nominee financial disclosure report. I will abide by your decision regarding the divestiture or retention of these assets and, if you direct the divestiture of any asset, I will accomplish the divestiture within 90 days of my confirmation. If any of the assets specifically identified in Section 10 as being retained acquire new assets, I understand that you will not require divestiture unless you make a determination that the asset has acquired a conflicting asset in a sector other than the two sectors identified in Section 10 and that recusal is inadvisable.. I will meet in person with you during the first week of my service in the position of Secretary in order to complete the initial ethics briefing required under 5 C.F.R. § 2638.305.

You have explained that, pursuant to 26 U.S.C. § 1043(a)-(b)(1), I will not be eligible for a Certificate of Divestiture for any asset being divested by an investment vehicle, such as a corporation, a limited liability company, a limited partnership, or other types of legal entities. You have also explained that, pursuant to 5 C.F.R. § 2634.1007(b), I will not be eligible for a Certificate of Divestiture for any of these assets that are "similar or related" to assets that I am retaining. However, I understand that I may be eligible to request a Certificate of Divestiture for qualifying assets and that a Certificate of Divestiture is effective only if obtained prior to divestiture. Regardless of whether I receive a Certificate of Divestiture, I will ensure that all divestitures discussed in this agreement occur within the agreed upon timeframes and that all proceeds are invested in "permitted property" as defined 5 C.F.R. § 2634.1003.

In respect of any interest or asset that I will divest as provided in this agreement, I am authorized to participate in my personal capacity in the divestiture process to the extent necessary to comply with contractual or legal requirements necessary to facilitate such divestiture, subject to any applicable ethics restrictions in conflict of interest laws and government ethics regulations. Among other such restrictions, I understand that, as Secretary, I will be subject to the earned income ban under 5 C.F.R. § 2635.804(a) and the restrictions on compensation under 5 C.F.R. §§ 2636.305-2636.306.

## SECTION 13 – PUBLIC POSTING OF AGREEMENT

I have been advised that this ethics agreement will be posted publicly, consistent with 5 U.S.C. § 552, on the website of the U.S. Office of Government Ethics with ethics agreements of other Presidential nominees who file public financial disclosure reports.

Sincerely,

Wilbur L. Ross

Mr. David Maggi
Alternate Designated Agency Ethics Official
Page 8

## <u>ATTACHMENT A – ADDITIONAL ASSETS TO BE DIVESTED</u>

I.  **The following entities will be divested within 90 days of confirmation:**

1.  Air Lease Corporation
2.  Amphenol Corp CL A
3.  Aperam NY Reg Shares
4.  Apple Inc.
5.  Arcelor Mittal SA
6.  Atara Biotherapeutics Inc Com
7.  Bank of Cyprus
8.  BankUnited, Inc.
9.  Bear Stearns Co. Inc. 6.4% Oct 2, 2017
10. Bear Stearns Co. Inc. 7 1/4% Feb 1, 2018
11. Boeing Co.
12. CDW Corp Com USD0.01
13. Chevron Corp New Com
14. Citigroup Inc Bond Perpetual 6.25000%
15. CME Group Inc.
16. FireEye Inc.
17. HSBC HLDGS PLC PERP SUB CAP SECS
18. Intercontinental Exchange, Inc.
19. Invesco Core Plus Fixed Income Fund
20. Invesco Private Capital Investments, Inc.
21. Invesco Private Capital, Inc.
22. Invesco WLR Limited
23. Invesco WLR Private Equity Investment Management, Ltd.
24. Merck & Co. Inc New Com
25. Moody's Corp.
26. MSCI Inc Com
27. Neustar Inc CL A
28. Ocwen Financial Corporation
29. SSgA Inflation Protected Bond Index Fund
30. SSgA U.S. Bond Index Non-Lending Series Fund Class C
31. Sun Bancorp, Inc. (Sun National Bank)
32. SVB Finl Group
33. Verisk Analytics Inc.
34. Wells Fargo & Co New Dep SHS REPSTG
35. Wex Inc.
36. WL Ross & Co (India) LLC
37. WL Ross & Co LLC
38. XTO Energy Corp 61/2% Dec 15, 2018
39. XTO Energy Inc. SR NTS 6.500% Matures 12/15/18
40. Zoetis Inc.

Mr. David Maggi
Alternate Designated Agency Ethics Official
Page 9

**II. The following entities will be divested within 180 days of confirmation:**

1. 8 Partners VC Fund I, L.P.
2. 8VC Angel Fund I, L.P.
3. Absolute Recovery Capital Partners LLC
4. Absolute Recovery Hedge Fund, Ltd.; Absolute Recovery Master Fund Ltd.
5. Euro Wagon II L.P.
6. Euro Wagon L.P.
7. Formation8 Partners Entrepreneur Fund II
8. Formation8 Partners Fund I
9. India Asset Recovery Associates LLC
10. India Asset Recovery Fund Limited (Mauritius)
11. India Asset Recovery GP Ltd. (Cayman)
12. Nexeo Solutions, Inc.
13. Ross CG GP LLC
14. Ross Expansion FLP, LP
15. Ross Expansion GP LLC
16. Ross FOF LLC
17. WL Ross GP LLC
18. WL Ross Group LP
19. WL Ross Sponsor LLC
20. WLR China Energy Associates, Ltd.
21. WLR Conduit MM LLC
22. WLR Euro Wagon Management Ltd. (Jersey)
23. WLR IV Loans AIV Feeder (Cayman), Ltd.
24. WLR Master Co-Investment GP, LLC
25. WLR Master Co-Investment SLP Associates LP (Cayman)
26. WLR Master Co-Investment SLP GP, LTD (Cayman)
27. WLR Master Co-Investment SLP, LLC
28. WLR Nanotechnology GP LLC
29. WLR Nanotechnology LP LLC
30. WLR Recovery Associates II, LLC
31. WLR Recovery Associates III, LLC
32. WLR Recovery Associates IV LLC
33. WLR Recovery Associates LLC
34. WLR Recovery Associates V LLC
35. WLR Ross Group (Cayman) Ltd.
36. WLR Select Associates DSS GP, Ltd.
37. WLR Select Associates DSS, L.P.
38. WLR Select Associates LLC
39. WLR-SC Financing Conduit LLC
40. YG Partners Fund, LP

January 31, 2017

Mr. David Maggi
Alternate Designated Agency Ethics Official
U.S. Department of Commerce
1401 Constitution Avenue, N.W.
Washington, D.C. 20230

Dear Mr. Maggi:

The purpose of this letter is to supplement my ethics agreement signed on January 15, 2017.  The following information supplements my ethics agreement:

I understand that as an appointee I will be required to sign the Ethics Pledge required under the Executive Order dated January 28, 2017 ("Ethics Commitments by Executive Branch Appointees") and that I will be bound by the requirements and restrictions therein in addition to the commitments I made in the ethics agreement I signed on January 15, 2017.

I have been advised that this supplement to my ethics agreement will be posted publicly, consistent with 5 U.S.C. § 552, on the website of the U.S. Office of Government Ethics with ethics agreements of other Presidential nominees who file public financial disclosure reports.

Sincerely,

Wilbur L. Ross